# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAUSE OF ACTION INSTITUTE<br>1875 Eye Street, NW<br>Suite 800<br>Washington, DC  20006, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 16-969 |
| INTERNAL REVENUE SERVICE,<br>1111 Constitution Ave., N.W.<br>Washington, DC  20224, | ) ) ) ) | |
| and | ) ) | |
| JOHN KOSKINEN,<br>in his official capacity as<br>Commissioner of the Internal Revenue Service<br>1111 Constitution Ave., N.W.<br>Washington, DC  20224 | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

### (For Declaratory, Injunctive, and Mandamus-Like Relief)

1.     This is an action under the Federal Records Act, 44 U.S.C. §§ 2101 *et seq.*,

§§ 2901 *et seq.,* §§ 3101 *et seq*., and §§ 3301 *et seq*., the Administrative Procedure Act, 5 U.S.C.

§§ 701 *et seq*., the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28

U.S.C. §§ 2201-2202, seeking (1) a declaration that Defendant Internal Revenue Service ("IRS")

and Defendant John Koskinen, in his official capacity as Commissioner of the IRS, have violated

federal recordkeeping laws by failing to capture, preserve, and safeguard instant message and

text message records in accordance with the standards of the Federal Records Act, and (2) an

order requiring Defendants to comply with their mandatory statutory obligations under the Federal Records Act to (a) establish guidelines and directives that will implement a records management system that will properly capture, preserve, and safeguard all IRS text message and instant message records, and (b) capture, preserve, and safeguard all IRS text message and instant message records permanently until Defendants have established the proper guidelines and directives.

## JURISDICTION AND VENUE

2.      Jurisdiction is asserted under 28 U.S.C. § 1331 (action arising under the laws of the United States), 5 U.S.C. §§ 701 *et seq.* (Administrative Procedure Act), 28 U.S.C. § 1361 (Mandamus Act), and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

3.      Venue is proper under 28 U.S.C. § 1391(e).

## PARTIES

4.      Cause of Action Institute ("CoA Institute") is a non-profit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair.  In carrying out its mission, CoA Institute uses various investigative and legal tools to educate the public about the importance of government transparency and accountability.  CoA Institute regularly requests access under the Freedom of Information Act ("FOIA") to the public records of federal agencies, entities, and offices, including the IRS, and disseminates its findings, analysis, and commentary to the general public.

5.      The IRS is a federal agency within the meaning of 5 U.S.C. § 551(1), § 552(f)(1), and § 701(b)(1).

6.      John Koskinen is the Commissioner of the IRS and is being sued in his official capacity only.  He is an "agency head" as defined by the Federal Records Act.

## FACTS

### A.   The Statutory Framework

7.      The Federal Records Act establishes the framework for records management throughout the federal government and requires the heads all federal agencies, including the IRS, to establish a system to capture, preserve, and safeguard records, including those in electronic form, created in the conduct of official government business.  Such records must be captured, preserved, and safeguarded in accordance with all applicable statutes, regulations, and agency guidelines.  *See* 44 U.S.C. chs. 21, 29, 31, 33; 36 C.F.R pts. 1220-1239.

8.      The Federal Records Act defines a "record" as any material, "regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them."  44 U.S.C. § 3301; *see also* 36 C.F.R. § 1220.18 (defining additional terms).

9.      The Federal Records Act requires the head of each federal agency to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities."  44 U.S.C. § 3101.

10.     Each agency head must "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," that, *inter alia,* provides for "effective controls over the creation and over the maintenance and use of records in the conduct of current business."  *Id.* § 3102.

3

11.     Agency heads also are obligated to "establish safeguards against the removal or loss of records the head of such agency determines to be necessary and required by regulations of the Archivist." *Id.* § 3105; *see also* 36 C.F.R. § 1230.10(a) (agency heads must "[p]revent the unlawful or accidental removal, defacing, alteration, or destruction of records"); *id.* §1230.10(c) (agency heads must "[i]mplement and disseminate policies and procedures to ensure that records are protected against unlawful or accidental removal, defacing, alteration and destruction").

12.     Records may be disposed of only in accordance with the provisions of the Federal Records Act. 44 U.S.C. § 3314 ("The procedures prescribed by this chapter are exclusive, and records of the United States Government may not be alienated or destroyed except under this chapter."). The disposition of records is defined as "any activity with respect to– (A) disposal of temporary records no longer necessary for the conduct of business by destruction or donation; (B) transfer of records to Federal agency storage facilities or records centers; (C) transfer to the National Archives of the United States of records determined to have sufficient historical or other value to warrant continued preservation; or (D) transfer of records from one Federal agency to any other Federal agency." *Id.* § 2901(5).

13.     The National Archives and Records Administration ("NARA") is the primary agency for records management oversight and is headed by the Archivist of the United States. *Id.* §§ 2102, 2904.

14.     Before disposing of records, an agency must receive permission or authorization from NARA, either in the form of a General Records Schedule (a schedule for the disposition of records that is common to several or all agencies) or an approved agency-specific disposition schedule. *Id.* §§ 3303, 3303a; 36 C.F.R. pts. 1224-1227; *see also* 36 C.F.R. § 1230.10(a)

("Records must not be destroyed except under the provisions of NARA-approved agency records schedules or the General Records Schedules issued by NARA.").

15.     The Federal Records Act defines "electronic messages" to mean "electronic mail and other electronic messaging systems that are used for purposes of communicating between individuals."  44 U.S.C. § 2911(c)(1).

16.     36 C.F.R. § 1220.18 defines an "electronic record" as "any information that is recorded in a form that only a computer can process and that satisfies the definition of a Federal record under the Federal Records Act.  The term includes both record content and associated metadata that the agency determines is required to meet agency business needs."

17.     In a bulletin sent to the heads of all federal agencies, NARA explained that all "[e]lectronic messages created or received in the course of agency business are Federal records. Like all Federal records, these electronic messages must be scheduled for disposition."  Nat'l Archives & Records Admin., Bull. No. 2015-02, Guidance on Managing Electronic Messages (July 29, 2015), *available at* http://1.usa.gov/1Xs0fln ("NARA Bulletin No. 2015-02").

18.     NARA further explained that "agencies must have records schedules that cover electronic messages. . . .  If an existing authority does not cover electronic messages that are records, agencies must develop a new disposition authority.  Electronic messages may have short-term, long-term, or permanent value and will need to be scheduled and managed accordingly.  By law, unscheduled records must be treated as permanent."  *Id.; see also* 36 C.F.R. § 1230.3(b) (unlawful or unauthorized destruction "means disposal of an unscheduled or permanent record; disposal prior to the end of the NARA-approved retention period of a temporary record . . . .").

19.     As set forth in the NARA bulletin, "electronic messages" include "Chat/Instant messaging," "Text messaging, also known as Multimedia Messaging Service (MMS) and Short Message Service (SMS)," and "Other messaging platforms or apps, such as social media or mobile device applications.  These include text, media, and voice messages."  NARA Bulletin No. 2015-02.

20.     In this context, text messaging involves "short message[s] sent electronically usually from one cell phone to another," *Text Message Definition*, Merriam-Webster.com, http://bit.ly/1TrjMD5 (last visited May 23, 2016), while instant messaging is defined as "an electronic messaging service that allows users to determine whether a certain party is connected to the messaging system at the same time" and that enables users "to exchange text messages with connected parties in real time."  Nat'l Archives & Records Admin., Frequently Asked Questions about Instant Messaging, http://1.usa.gov/1WKNsvc (last visited May 23, 2016).

### B.     The Failure of Defendants to Preserve Instant Message Records

21.     On or about June 30, 2015, at the behest of the Senate Finance Committee, the Treasury Inspector General for Tax Administration issued a report on the hard drive failures within the IRS that resulted in the loss of numerous agency records, including the email communications of Lois Lerner, former head of the IRS tax-exempt organizations unit.  *See* Treasury Inspector Gen. for Tax Admin., Report of Investigation: Exempt Organizations Data Loss (June 30, 2015) (attached as Ex. 1).

22.     Among other matters, this report revealed that the IRS maintained an instant messaging system for employee communications through the IRS Microsoft Office Communications Server ("OCS"), but that, as a result of a memorandum of understanding ("MOU") between the IRS and the National Treasury Employees Union, the IRS did not capture,

preserve, or retain such instant message records. *Id.* at 21 (explaining that "[t]he terms of the MOU dictated that the IRS would not log or record the contents of OCS instant messages[.]").

23.    Although agents sought to recover instant message communications between Lois Lerner and other IRS employees, they were unable to do so. *Id.*

24.    The MOU between the IRS and the National Treasury Employees Union was executed on July 30, 2010. Ex. 2. That document explains that "[w]ith regard to the Instant Message function, no log or message content will be saved at the server or on a desktop." *Id.* at 2.

25.    On information and belief, the terms of this MOU between the IRS and the National Treasury Employees Union as they relate to instant message records remain operative.

26.    The MOU between the IRS and the National Treasury Employees Union created an IRS guideline and directive that improperly and unlawfully interferes with the Federal Records Act obligations of the Defendants to capture, preserve, and safeguard federal records, including instant messages, regardless of their form.

27.    Defendants confirmed to CoA Institute the current IRS guideline and directive with respect to instant message records by informing CoA Institute, in response to a FOIA request, that "the Internal Revenue Service does not capture or maintain OCS messages." *See infra* ¶¶ 46-47; Ex. 10.

28.    On information and belief, the IRS does not have a NARA-approved disposition schedule or any other authorization allowing it to disregard its federal recordkeeping obligations with respect to instant message records.

29.    By failing to capture, preserve, or retain a whole class of federal records (*i.e.*, instant message records) at the behest of their employees' union, Defendants are in violation of

their statutory obligations relating to the preservation, maintenance, and safeguarding of records under the Federal Records Act.

### C.  The Failure of Defendants to Preserve Text Messages

30.     By letter, dated November 14, 2014, as part of an investigation into how federal agencies process their text message records, CoA Institute submitted a FOIA request to the IRS asking it to produce the text message records of five high-ranking agency officials for a one-week period in which text messaging likely would have been used to conduct agency business (November 2-8, 2014, or election week).  Ex. 3.

31.     The IRS responded to this FOIA request by phone call and by email, both on December 2, 2014, and explained that "the retention period for text messages is the most recent 14 days and then the messages are deleted.  Therefore, there are no text messages that can be retrieved for the time period November 2, 2014 to November 8, 2014."  Ex. 4.

32.     In a follow-up to this response, CoA Institute modified its original request and asked the IRS to produce its retention guidelines for text messages.  *See* Ex. 5 at 1(explaining that "[o]n December 3, 2014, [CoA Institute] spoke to Denise Higley and asked if she could provide  . . the retention guidelines for text messaging").

33.     By letter, dated May 7, 2015, the IRS responded to the modified FOIA request for the IRS retention guidelines for text messages.  It reiterated its previous explanation about retaining text messages for only fourteen days and explained further that "[d]eleting log files is part of the routine system housekeeping to ensure peak performance."  *Id*.  The IRS also produced "a one-page document most responsive to your request" labeled "BES[Blackberry Enterprise Server] Site Checks", which explained that "it was determined that maintaining approximately 14 days of log files, due to spacing constraints, helped to ensure a more stable BES environment in the IRS."  *Id* at 3.

8

34.     By letter, dated July 28, 2015, CoA Institute submitted a second FOIA request to the IRS seeking all records related to the processing of the first CoA Institute FOIA request. Ex 6.

35.     In response to this second FOIA request and under cover of its final determination letter, dated October 14, 2015, the IRS provided, *inter alia*, a processing note entry stating that "I have already spoken to [IRS employee] Martin Kelly, IT, about retention of blackberry text messages and they are only kept for the most recent 14 days.  Therefore, the time frame of this request does not fit within the retention period.  However, Counsel has stated we should provide the most recent information available due to the retention period being what it is."  Ex. 7.

36.     The IRS also provided a December 29, 2014 email chain between IRS employees Martin J. Kelly and Denise Higley that discussed the applicable retention guidelines for text messages.  *See* Ex. 8.  That email chain reveals that whereas Mr. Kelly did not "believe we actually have a policy statement anywhere . . . System Administrators are told to delete messages over 14 days old in the Computer Operators Handbook[.]"  *Id.*

37.     The IRS guidelines and directives with respect to text messages thus dictate that all such messages, regardless of their content as federal records, are retained only for fourteen days and thereafter are deleted.

38.     On information and belief, the IRS does not have a NARA-approved disposition schedule or any other authorization allowing it to delete all text message records after retaining them for only fourteen days.

39.     By failing to preserve a whole class of federal records (*i.e.,* text messages) beyond a minimal time period, Defendants are in violation of their statutory obligations relating to the preservation, maintenance, and safeguarding of records under the Federal Records Act.

**D.      Federal Records Act Violations by Defendants Have Harmed CoA Institute**

40.     As mentioned, by letter, dated November 14, 2014, CoA Institute submitted a FOIA request to the IRS seeking the text message records of five high-ranking agency officials for the one-week period preceding the last federal election.  Ex. 3.

41.     The IRS informed CoA Institute that no text messages could be produced because its guidelines and directives dictate that all text messages, regardless of their content as federal records, are deleted after fourteen days.  Exs. 4, 5, 7, 8.

42.     Such guidelines and directives violate the Federal Records Act, and CoA Institute has been harmed because it was unable to secure text message records responsive to its FOIA request because of that violation.

43.     CoA Institute also has been harmed by Defendants' violation of the Federal Records Act with respect to IRS instant messages.

44.     In response to the second CoA Institute FOIA request described above (Ex. 6), the IRS provided a processing note entry that describes a December 12, 2014 OCS instant message sent from one IRS employee to another relating to the processing of the first CoA Institute FOIA request.  *See* Ex. 7 ("I sent Martin Kelly an OCS message to verify the dates the information is available.").

45.     The referenced OCS instant message is responsive to the second FOIA request and should have been produced—but the IRS did not produce it and likely could not produce it because, as a result of the MOU between the IRS and the National Treasury Employees Union, the IRS does not retain any instant messages.

46.     In addition, by letter, dated September 21, 2015, CoA Institute submitted a third FOIA request to the IRS seeking production of the OCS instant message records of IRS

10

employees Lois Lerner and Nikole Flax, and all OCS instant message records mentioning the words "Lois" or "Lerner" for the period February 1, 2010 to the present.  Ex. 9.

47.     The IRS responded to that request by letter, dated October 26, 2015, and reported that no documents were located and that the "the Internal Revenue Service does not capture or maintain OCS messages."  Ex. 10.

48.     The IRS guidelines and directives with respect to both instant messages and text messages frustrate and prevent CoA Institute's legal right to obtain the records it has requested and to which it has a right under FOIA.  Defendants' violation of the Federal Records Act in this matter is a direct harm to CoA Institute.

49.     If not corrected, Defendants' Federal Records Act violations will continue to cause harm because CoA Institute makes extensive use of government documents and records secured through FOIA.  CoA Institute regularly requests access to the public records of federal agencies, entities, and offices, including the IRS, and its work will be materially and irrevocably harmed if it is unable to secure entire classes of federal records such as IRS instant message and text message records.

## FIRST CLAIM FOR RELIEF
### For Declaratory and Injunctive Relief

50.     CoA Institute repeats paragraphs 1-49.

51.     The Federal Records Act requires Defendants to establish an adequate system for the capture and preservation of federal records regardless of their form and to establish safeguards against the removal or loss of such records.  44 U.S.C. §§ 3101, 3102, 3105.

52.     Instant messages and text messages of IRS employees made or received in connection with their government work are federal records under the Federal Records Act.

11

53.     Defendants are obligated by the Federal Records Act to establish and implement guidelines and directives for the proper capture, preservation, and safeguarding of instant message and text message records.

54.     The MOU between the IRS and the National Treasury Employees Union establishes a guideline and directive that the IRS will not capture, preserve, or retain the contents of instant messages between IRS employees, even if such messages constitute federal records. The effect of the MOU is that vital federal records are never saved and are permanently lost.

55.     An agreement with a union or any other party cannot supersede the requirements of the Federal Records Act or authorize Defendants to circumvent their statutory recordkeeping obligations.  Any such agreement exceeds the scope of Defendants' authority.  *See, e.g.,* 5 U.S.C. 7117(a)(1) (agency duty to bargain in good faith with employee union does not include matters "inconsistent with any federal law or any Government-wide rule or regulation").

56.     The failure of Defendants to ensure that instant message records are properly captured, preserved, and safeguarded is arbitrary and capricious agency action and violates the Federal Records Act.

57.     IRS guidelines and directives with respect to text messages dictate that such messages, regardless of their content as federal records, are retained for only fourteen days, after which they are deleted.  The effect is that vital federal records are permanently lost.

58.     The failure of Defendants to ensure that text message records are properly captured, preserved, and safeguarded is arbitrary and capricious agency action and violates the Federal Records Act.

59.     CoA Institute, a non-profit strategic oversight organization that makes information in IRS and other government records available to the public, has a direct interest in

ensuring that Defendants' instant message and text message records are captured, preserved, and made accessible to the public in accordance with the Federal Records Act and FOIA.

60. Defendants have failed to carry out their mandatory statutory obligations under the Federal Records Act to create a proper recordkeeping system for the instant message and text message records of IRS employees, and that Federal Records Act violation has harmed CoA Institute by preventing it from obtaining records to which it has a right under FOIA.

61. CoA Institute is entitled to a declaratory judgment that Defendants are in violation of their mandatory statutory obligations under the Federal Records Act to capture, preserve, and safeguard instant message and text message records, and to permanent injunctive relief requiring Defendants to establish guidelines and directives that will implement an adequate system for the proper capture, preservation, and safeguarding of such records and to preserve all such records permanently until Defendants have established the proper guidelines and directives.

## SECOND CLAIM FOR RELIEF
### For Mandamus-like Relief

62. CoA Institute repeats paragraphs 1-61.

63. Defendants have a mandatory statutory obligation under the Federal Records Act to establish guidelines and directives for the proper capture, preservation, and safeguarding of instant messages and text messages that constitute records within the meaning of the Federal Records Act.

64. The current IRS guidelines and directives with respect to instant message and text message records violate the mandatory statutory obligations under the Federal Records Act because the IRS fails to capture, preserve, or retain any of the instant message records of its employees and deletes all text message records after fourteen days.

65.     CoA Institute, a non-profit strategic oversight organization that makes information in IRS and other government records available to the public, has a direct interest in ensuring that Defendants' instant message and text message records are captured, preserved, and made accessible to the public in accordance with the Federal Records Act and FOIA.

66.     Defendants have failed to carry out their mandatory statutory obligations under the Federal Records Act to create a proper recordkeeping system for the instant message and text message records of IRS employees, and that Federal Records Act violation has harmed CoA Institute by preventing it from obtaining records to which it has a right under FOIA.

67.     CoA Institute is entitled to relief in the form of a writ of mandamus ordering Defendants to comply with their mandatory statutory obligations under the Federal Records Act to establish guidelines and directives that will implement an adequate system for the proper capture, preservation, and safeguarding of instant message and text message records and to preserve all instant message and text message records permanently until Defendants have established the proper guidelines and directives.

## **RELIEF REQUESTED**

WHEREFORE, Cause of Action Institute respectfully requests that this Court:

A.     Declare that Defendants have acted arbitrarily and capriciously and in violation of the Federal Records Act by failing to capture, preserve, and safeguard IRS instant message and text message records;

B.     Order Defendants, in the form of injunctive and/or mandamus relief, to comply with the Federal Records Act by establishing guidelines and directives that will implement a records management system that properly captures, preserves, and safeguards all IRS instant message and text message records;

C.     Order Defendants, in the form of injunctive and/or mandamus relief, to preserve all IRS instant message and text message records permanently until Defendants have established the proper guidelines and directives for the capture, preservation, and safeguarding of such records;

D.     Award Cause of Action Institute its costs and reasonable attorney fees incurred in this action; and

E.     Grant such other relief as the Court may deem just and proper.


Dated:  May 23, 2016                              Respectfully submitted,

                                                  */s/ John J. Vecchione*

                                                  Alfred J. Lechner, Jr. (*pro hac vice* pending)
                                                  John J. Vecchione
                                                  D.C. Bar No. 431764
                                                  Lee A. Steven
                                                  D.C. Bar No. 468543
                                                  Joshua N. Schopf
                                                  D.C. Bar No. 465553

                                                  CAUSE OF ACTION INSTITUTE
                                                  1875 Eye Street, NW Suite 800
                                                  Washington, DC 20006
                                                  Telephone: (202) 499-4232
                                                  Facsimile: (202) 330-5842
                                                  jlechner@causeofaction.org
                                                  john.vecchione@causeofaction.org
                                                  lee.steven@causeofaction.org
                                                  josh.schopf@causeofaction.org

                                                  *Attorneys for Plaintiff*