IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUSE OF ACTION INSTITUTE,<br><br>              Plaintiff,<br><br>     v.<br><br>INTERNAL REVENUE SERVICE, and<br>JOHN KOSKINEN, in his official capacity as<br>COMMISSIONER OF THE INTERNAL<br>REVENUE SERVICE,<br><br>              Defendants. | Civil Action No. 1:16-cv-00969-RJL |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR MOOTNESS**

Plaintiff Cause of Action Institute ("CoA Institute") brings this suit under the Federal Records Act ("FRA") and the Administrative Procedure Act ("APA") to challenge defendant Internal Revenue Service ("IRS's") policies for management of instant message and text message records. In its Complaint, plaintiff alleges that the IRS has failed to establish guidelines and directives that will ensure that it adequately captures, preserves, and safeguards such records. After the Complaint was filed, however, the IRS issued guidance specifically addressing "the usage and preservation of all electronic messaging systems (including instant and text messaging platforms)." *See* Exhibit B to Declaration of Edward T. Killen, Director, Privacy, Governmental Liaison & Disclosure, IRS ("Killen Decl."). This guidance addresses the status of instant message and text message communications and instructs employees as to the preservation of any such communications that constitute federal records. The guidance is effective immediately, and

will shortly be made part of the Internal Revenue Manual ("IRM"), the agency's compendium of internal operating procedures and policies.

Thus, regardless of the merit of the claims in the Complaint at the time it was filed, those claims have now been overtaken by the IRS's issuance of its new guidance. The Complaint (¶ 1) sought the issuance of new "guidelines and directives" to govern text and instant messages, and that has now been done. Accordingly, the Complaint should be dismissed for lack of subject-matter jurisdiction on the ground that the case is moot.

## BACKGROUND

### I.   THE FEDERAL RECORDS ACT

The FRA is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999); *see* 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. The FRA requires the head of each federal agency to establish an adequate system for the capture and preservation of federal records regardless of their form and to establish safeguards against the removal or loss of such records. 44 U.S.C. §§ 3101, 3102, 3105. Each agency head must "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," that, *inter alia,* provides for "effective controls over the creation and over the maintenance and use of records in the conduct of current business." *Id.* § 3102.

Federal records may be disposed of only in accordance with the provisions of the FRA. 44 U.S.C. § 3314 ("The procedures prescribed by this chapter are exclusive, and records of the United States Government may not be alienated or destroyed except under this chapter."). Before disposing of records, an agency must receive permission or authorization from the

2

National Archives and Records Administration ("NARA"), either in the form of a General Records Schedule (a schedule for the disposition of records that is common to several or all agencies) or an approved agency-specific disposition schedule. *Id.* §§ 3303, 3303a; 36 C.F.R. pts. 1224-1227; *see also* 36 C.F.R. § 1230.10(a) ("Records must not be destroyed except under the provisions of NARA-approved agency records schedules or the General Records Schedules issued by NARA.").

Not all agency documents or items qualify as federal records. The FRA defines a "record" as any material, "regardless of physical form or characteristics, made or received by an agency of the United States Government" "and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them." 44 U.S.C. § 3301; *see also* 36 C.F.R. § 1220.18 (defining additional terms). "[E]lectronic messages," such as email or instant messages, that meet these standards are federal records. As NARA as explained, "[e]lectronic messages created or received in the course of agency business are Federal records" and "[l]ike all Federal records, these electronic messages must be scheduled for disposition." NARA Bull. No. 2015-02, Guidance on Managing Electronic Messages (July 29, 2015), *available at* https://www.archives.gov/records-mgmt/bulletins/2015/2015-02.html (last visited Oct. 17, 2016) ("NARA Bulletin No. 2015-02").

As set forth in the NARA bulletin, "electronic messages" include "Chat/Instant messaging," "Text messaging, also known as Multimedia Messaging Service (MMS) and Short Message Service (SMS)," and "Other messaging platforms or apps, such as social media or mobile device applications." NARA Bulletin No. 2015-02; *see also* 44 U.S.C. § 2911(c)(1)

3

(defining electronic messages). "Instant messaging" is defined as "an electronic messaging service that allows users to determine whether a certain party is connected to the messaging system at the same time" and that enables users "to exchange text messages with connected parties in real time." NARA, Frequently Asked Questions about Instant Messaging, https://www.archives.gov/records-mgmt/initiatives/im-faq.html (last visited Oct. 6, 2016). Text messaging is generally understood to involve "'short message[s] sent electronically usually from one cell phone to another.'" Compl. ¶ 20.

The FRA does not authorize a private right of action to enforce any of its provisions. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 149-50 (1980). Some limited judicial review of compliance with the FRA is available under the APA. *Armstrong v. Bush*, 924 F.2d 282, 291 (D.C. Cir. 1991). Specifically, a district court may review the adequacy of an agency's recordkeeping guidelines and directives under the APA, and may also review whether the Archivist or the head of an agency have properly performed their FRA enforcement duties. *Id.* at 293. However, the "FRA *prohibits* any judicial assessment of agency compliance [with its recordkeeping guidance] in specific factual contexts." *Competitive Enterprise Inst. v. U.S. EPA*, 67 F. Supp. 3d 23, 33 (2014) (emphasis in original).

## II.   IRS POLICY AND GUIDANCE WITH REGARD TO PRESERVATION OF INSTANT MESSAGES AND TEXT MESSAGES, PRIOR TO 2016

1.   IRS employees are generally instructed in the IRM that "[a]ll Federal employees are required by law to preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." IRM 1.10.3.2.3 (added Apr. 1, 2003); *see also* IRM 1.15.1.7.6(1) (added Dec. 19, 2008) ("Each IRS employee must: Manage the records they create and/or maintain in accordance with policies

4

outlined in IRMs 1.15.1 through IRM 1.15.7."). They are further advised that this requirement applies equally to email. IRM 1.10.3.2.3 (added Apr. 1, 2003); *see also* IRM 1.15.1.6.9(2) (added Nov. 15, 1999) (email records must be retained electronically according to the NARA-approved disposition authority or printed and associated with the appropriate recordkeeping system).

In addition, the IRS has issued the following guidance and statements that apply specifically to instant message and/or text message records:

### A. 2010 Guidance

In 2010, Chapter 15 of part 1 of the IRM, which covers "Records and Information Management," was revised to address "Use of Social Media and Collaboration Tools," including new instant messaging applications. New Section 14 of IRM subchapter 1.15.6 (Managing Electronic Records) provided that "IRS must plan for the proper management of record material produced using Collaboration Tools such as Microsoft SharePoint, Microsoft Office Communicator, and any other instant messaging or collaboration environments (i.e. wikis, blogs, web portals, etc.)." IRM 1.15.6.14. This section further provided as follows:

> (3) The following records management considerations must be addressed with the use of these new technologies:
>
>   a. Information that meets the statutory definition of a federal record (44 USC 3301) must be captured and managed in accordance with an approved Records Control Schedule.
>
>   b. Records must be captured in an accessible, usable format.
>
>   . . .
>
>   c. A responsible office/Agency must be designated for the management of record material. In some cases, more than

        one entity may have a responsibility for the same records, depending on their use.

    d. Records must be managed in accordance with the content and not the format.

    e. Records determined to have Permanent value must be transferred to NARA in an approved format. Records may have to be migrated from original format to one accepted by NARA at the time of transfer.

*Id.*

### B.  2010 Memorandum of Understanding with National Treasury Employees Union

On July, 2010, the IRS entered into a memorandum of understanding ("MOU") with the National Treasury Employees Union ("NTEU"), regarding the implementation of the new instant messaging system included in Microsoft Office Communicator Server ("OCS"). *See* Compl., Exh. 2 (ECF No. 1-2). The MOU provided that, "[w]ith regard to the Instant Message function, no log or message content will be saved at the server or on a desktop." *Id.* at 2. However, it also explained that, "[a]t the employee's election, an employee may choose to change the desktop option and save his/her instant message conversations to his/her computer." *Id.*

### C.  2012 Guidance

In 2012, the IRS issued its initial guidance on preservation of instant messaging records to comply with the directive in IRM 1.15.6.14. *See* Instant Messaging Recordkeeping Guidance (May 8, 2012), Exh. A to Killen Decl. This guidance advised that "[j]ust as any other official record, instant messages that cannot be immediately deleted or that contain substantive value must be captured and managed in an approved recordkeeping system." *Id.* at 2. The guidance went on to instruct as to how such messages are to be preserved:

6

> Official records that are maintained for 180 days or less can be maintained electronically within Microsoft Outlook.  This requires that OCS save messages in a folder within Outlook.  Records that must be maintained beyond 180 days must be either transferred to an electronic Records Management Application such as EMC Documentum (or its equivalent with full recordkeeping functionality) or in the absence of such printed and filed.

*Id.*

### III.   PLAINTIFF'S FOIA REQUESTS AND THIS LAWSUIT

The Complaint references the following three Freedom of Information Act ("FOIA") requests submitted by plaintiff CoA Institute to the IRS.

First, by letter dated November 14, 2014, plaintiff submitted a FOIA request asking the IRS to produce the text message records of five high-ranking agency officials for the period of November 2-8, 2014.  Compl., Exh. 3 (ECF No. 1-3).  The IRS responded to this FOIA request by phone call and by email, both on December 2, 2014, and explained that "the retention period for text messages is the most recent 14 days and then the messages are deleted.  Therefore, there are no text messages that can be retrieved for the time period November 2, 2014 to November 8, 2014."  *Id.*, Exh. 4 (ECF No. 1-4).  In a follow-up to this response, CoA Institute modified its original request and asked the IRS to produce its retention guidelines for text messages, which the IRS did on May 7, 2015.  *Id.,* Exh. 5 (ECF No. 1-5).  CoA's appeal was subsequently dismissed on July 13, 2015.  *Id.*, Exh. 6 (ECF No. 1-6, at 5-7).

Second, by letter dated July 28, 2015, CoA Institute submitted a second FOIA request to the IRS seeking all records related to the processing of the first CoA Institute FOIA request.  Compl., Exh. 6 (ECF No. 1-6). The IRS produced responsive records on October 14, 2015.  *Id.*, Exh. 7 (ECF No. 1-7).

7

Third, by letter dated September 21, 2015, CoA Institute submitted a FOIA request to the IRS seeking production of the OCS instant message records of IRS employees Lois Lerner and Nikole Flax, and all OCS instant message records mentioning the words "Lois" or "Lerner" for the period February 1, 2010 to the present.  Compl., Exh. 9 (ECF No. 1-9).  The IRS responded to that request by letter dated October 26, 2015.  *Id.*, Exh. 10 (ECF No. 1-10).  The IRS reported that "the Internal Revenue Service does not capture or maintain OCS messages" but "[n]evertheless, a search was conducted and no documents were located."  *Id.*

CoA subsequently filed the present lawsuit under the FRA, the APA, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  Plaintiff's Complaint seeks  (1) a declaration that defendants have "violated federal recordkeeping laws by failing to capture, preserve, and safeguard instant message and text message records in accordance with the standards of the Federal Records Act," and (2) an order requiring defendants "to comply with their mandatory statutory obligations under the Federal Records Act to (a) establish guidelines and directives that will implement a records management system that will properly capture, preserve, and safeguard all IRS text message and instant message records, and (b) capture, preserve, and safeguard all IRS text message and instant message records permanently until Defendants have established the proper guidelines and directives."  Compl. ¶ 1.

## IV.    THE IRS'S 2016 GUIDANCE

On July 29, 2016, after the lawsuit as filed, the IRS issued further guidance, entitled "Electronic Message Usage and Preservation," that addresses "the usage and preservation of all electronic messaging systems (including instant and text messaging platforms)."  *See* Exh. B to

Killen Decl. This guidance, labeled "interim," is effective immediately. *Id.* at 2. It is expected that it will be incorporated into IRM by the end of 2016. Killen Decl. ¶ 5.

With respect to instant messaging, this guidance provides that "[e]mployees **should not** use electronic messaging systems such as OCS and Lync instant messaging to engage in discussions regarding policy matters, business decisions, or documentation of other mission-critical functions." Exh. B to Killen Decl., at 3 (boldface in original). The guidance further provides that, should OCS or instant messaging be nevertheless used in this matter, "the message must be preserved in association with related records and in accordance with applicable records schedules." *Id.* at 4. The guidance then proceeds to instruct employees as to how to save such messages so as to properly preserve them. *Id.* at 5.

With regard to text messaging, the interim guidance further provides that "the use of text messaging with government-furnished BlackBerrys or cellular phones to conduct official business is prohibited" and "[t]ext messaging may only be used in emergencies." Exh. B to Killen Decl., at 3. It further instructs employees as to how to save any records generated in such an emergency situation. *Id.* at 6.

In connection with issuance of the July 29, 2016, guidance, the IRS prepared FAQs for employees that are in the Privacy & Disclosure Virtual Library on the IRS Intranet site, IRWeb. *See* Killen Decl., Exh. C. The IRS also provided notification of the new guidance in the PGLD Bulletin, an electronic newsletter available through email and the Daily News section of the IRWeb on August 2, 2016 (*id.*, Exh. D); in a Leaders Alert, a weekly electronic newsletter emailed to managers and available on the IRWeb on August 2, 2016 (*id.*, Exh. E); and in an electronic newsletter emailed to IRS employees ("IRS Headlines") on August 8, 2016 (*id.*, Exh.

9

F). Relatedly, the Office of Chief Counsel issued supplemental guidance on instant and text messaging to its employees on August 4, 2016. *See id.*, Exh. G.

## STANDARD OF REVIEW

Defendants seek dismissal of this case under Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks subject-matter jurisdiction because the case is moot. When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of demonstrating the existence of subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal quotation marks and citations omitted). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks and citations omitted). The Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ARGUMENT

### I. THE COURT LACKS SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFF'S CLAIMS ARE MOOT

The Constitution confines the jurisdiction of federal courts to claims that embody actual "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. To meet this requirement in a case seeking injunctive relief, "a plaintiff must show that he is under threat of suffering 'injury in

10

fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

The standing requirements must be satisfied at every stage of the litigation. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ("'[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" (citation omitted)). Thus, "[e]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citations omitted). "If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001); *see also LaRoque v. Holder*, 679 F.3d 905, 909 (D.C. Cir. 2012) (case is moot when "appellants have obtained everything that they could recover from this lawsuit" (internal quotation marks and modifications omitted)). Thus, there remains no "live" case or controversy before the court when "the policy, rule, and statute that gave rise to this suit are no longer in the same posture." *American Bar Ass'n v. FTC*, 636 F.3d 641, 647 (D.C. Cir. 2011).

In this case, the IRS has now largely provided the relief plaintiff sought – the issuance of recent, specific IRS guidance regarding preservation of instant message and text message

11

records. As a result of this recent guidance, the factual background on which the claims in the Complaint are premised has been completely transformed. To the extent that the Complaint stated any viable claims at the time of filing, any such claims have been mooted by this subsequent development, which has altered the posture of the case. *See Judicial Watch, Inc. v. Kerry*, 156 F. Supp. 3d 69, 76 (D.D.C. 2016) (holding that case seeking to compel agencies to recover records under the FRA was moot where "Defendants have taken a number of significant corrective steps to recover" the records at issue), *appeals docketed*, Nos. 16-5015 (D.C. Cir. Jan. 29, 2016), 16-5060 & 16-5061 (D.C. Cir. Mar. 29, 2016), 16-5077 (D.C. Cir. Apr. 14, 2016); *Citizens for Responsibility & Ethics in Wash. v. U.S. SEC*, 858 F. Supp. 2d 51, 54-55 (D.D.C. 2012) ("*CREW*") (holding FRA case mooted "due to the SEC's abandonment of the challenged policy . . . and its subsequent efforts to implement a policy that will comply with the FRA"); *see also U.S. Dep't of Treasury v. Galioto*, 477 U.S. 556, 559-60 (1986) (holding that, when intervening legislation "alters the posture" of a pending case, "it is the duty of the appellate court" to vacate the judgment of the district court and dismiss the case as moot) (internal quotation marks and citation omitted); *American Bar Ass'n*, 636 F.3d at 643-44 ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."); *Clarke*, 915 F.2d at 700. The Complaint cannot be read to challenge the new guidance, as it does not mention that guidance and, in any event, plaintiff could not yet have sustained any injury from the new guidance and therefore at present lacks standing to challenge it. As written now, therefore, the Complaint no longer asserts any live issues, and the case should be dismissed.

"Plaintiff[] cannot evade the mootness of [its] claim by requesting a declaratory judgment." *Long v. Bureau of Alcohol, Tobacco & Firearms*, 964 F. Supp. 494, 497 (D.D.C. 1997). "Where an intervening event renders the underlying case moot, a declaratory judgment can no longer 'affect[ ] the behavior of the defendant towards the plaintiff,'. . . and thus 'afford[s] the plaintiffs no relief whatsoever.'" *NBC-USA Hous., Inc, Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) (citations omitted); *see also Competitive Enterprise Inst. v. U.S. EPA*, 153 F. Supp. 3d 376, 382 (D.D.C. 2016) (dismissing claims for both injunctive and declaratory relief as moot); *Long*, 964 F. Supp. at 497 ("While the Declaratory Judgment Act . . . 'permits a federal court to declare the rights of a party whether or not further relief is or could be sought,' . . . 'a declaratory judgment may not be used to secure judicial determination of moot questions.'").

Finally, neither of the two exceptions to the mootness doctrine – the exception for cases that are capable of repetition, yet evading review, or the voluntary cessation exception – applies here. *See Del Monte Fresh Produce Co. v. U.S.*, 570 F.3d 316, 321 (D.C. Cir. 2009). Under the capable of repetition yet evading review exception to mootness, the plaintiff must demonstrate that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 322 (citation and internal quotation marks omitted). The action plaintiff generally seeks to challenge here – the IRS's guidance or policy with regard to text and instant messages – is not inherently too short to be reviewed. The IRS intends to incorporate the new guidance into the IRM. Killen Decl. ¶ 5. The new guidance is therefore "in no danger of expiring before" a plaintiff with proper standing could obtain judicial

13

review. *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 742, 268 (D.C. Cir. 1988) (finding that the evading-review exception did not apply to conclusion that the Secretary of the Interior's withdrawal of a challenged regulation rendered case moot). And the voluntary cessation exception is rarely applied against the government, and certainly should not be here where the IRS's new guidance is in line with previous guidance and intended eventually to be incorporated into the IRM. These circumstances are indicia that the IRS does not intend to renege on its action. *See Clarke*, 915 F.2d at 705. Thus, nothing in the circumstances here saves this case from mootness.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the present case as moot.

Dated: October 17, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director

/s/ Carol Federighi
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendants*